E. BRYAN WILSON
Acting United States Attorney

ADAM ALEXANDER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:19-cr-00138-SLG-MMS |
| | ) |
| Plaintiff, | ) |
| | ) **PLEA AGREEMENT** |
| vs. | ) |
| | ) |
| ALEX REQUINA ASINO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Unless the parties jointly inform the Court in writing of
any additional agreements, this document in its entirety
contains the terms of the plea agreement between the
defendant and the United States. This agreement is
limited to the District of Alaska; it does not bind other
federal, state, or local prosecuting authorities.**

## I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the Indictment in this case: 7 and **8** - Online Enticement or Coercion, in violation of 18 U.S.C. § 2422(b). The defendant stipulates that the following specific offense characteristics apply to his offenses of conviction: USSG 2G1.3 sections (b)(2)(B) (undue influence); (b)(3) (use of a computer); (b)(4) (commercial sex act) resulting in an adjusted base offense of no less than 40 prior to any offset for acceptance of responsibility. The defendant also stipulates to the fact that the offense conduct at issue in this matter was committed while he was on release in a prior matter prosecuted by the State of Alaska in case 3AN-18-09089CR. The United States agrees not to prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Indictment.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

### B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty plea(s) if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

### A. Charges

**1.** **The defendant agrees to plead guilty to the following counts of the Indictment:**

Count 7 and 8: Online Enticement or Coercion, a violation of 18 U.S.C. § 2422(b)

### B. Elements

The elements of the charges in Counts 7 and 8 to which the defendant is pleading guilty are as follows:

**1.** That between a date unknown to the Grand Jury, and on or about November 14, 2019, within the District of Alaska and elsewhere, the defendant used or attempted to use any means of interstate and foreign commerce, to wit a cellular phone, to knowingly induce, entice, and coerce an individual to engage in any sexual activity for which any person can be charged with a criminal offense; to wit Sexual Abuse of a Minor in the Second Degree, in violation of Alaska Statute 11.41.436(a); Production of Child Pornography, in violation of 18 U.S.C 2251(a); and Sex Trafficking of Children, in violation of 18 U.S.C. 1591; and

**2.** The defendant believed that the individual he attempted to persuade, induce, entice, or coerce was under the age of 18; and

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 3 of 27

**3.** Third, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

### C.    Factual Basis

The defendant admits the truth of the allegations in Count 7 of the Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty pleas and for the imposition of the sentence:

On September 27th, 2019, the DEFENDANT was arrested by the Anchorage Police Department and charged by the State of Alaska with one count of Misconduct Involving Controlled Substances in the First Degree for delivering schedule 1A substances to a minor in violation of Alaska Statute 11.71.010(a)(1), one count of Sexual Abuse of a Minor in the Second Degree in violation of AS 11.41.436(a)(1) and one count of possession of child pornography in violation of AS 11.61.127 in case 3AN-18-09089CR.

The information filed by the District Attorney's Office in that matter alleged that on September 26, 2018, the Anchorage Police Department (APD) responded to a report of a suicidal teenager at a High School in Anchorage, Alaska (VICTIM 1). Through the course of the investigation APD learned that VICTIM 1 had met an individual later identified as the DEFENDANT through the online social media applications Snapchat and Whisper, and later met him at his vehicle where the DEFENDANT engaged in sexual penetration. APD recorded a consensually monitored conversation between VICTIM 1

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS            Page 4 of 27

and the DEFENDANT in the course of that investigation, during which time the DEFENDANT made admissions regarding distributing drugs to VICTIM 1 and knowing her age. The DEFENDANT was later interviewed by APD and made admissions regarding his exchange of narcotics for sex with VICTIM 1; stated that he believed that she was 16 years of age rather than 15; and said that VICTIM 1 "came to me. . . I never forced her . . . she never said no to me – it's all on her."

Over the objections of the state prosecutor, the State District Court Judge presiding over the DEFENDANT's arraignment set bail at $10,000 unsecured bond, $1,000 cash performance bond, and supervision through electronic monitoring by the pre-trial enforcement division of the Alaska Department of Corrections. He was assessed by the pre-trial enforcement division at a level 1, very low risk of reoffending, which carries with it a presumption of release on his own recognizance.

On November 7, 2019, agents with the Federal Bureau of Investigation (FBI) learned that the DEFENDANT, under the guise of his username "Pandazak907" (from USASexGuide.nl), had been communicating with a private individual acting at their own direction via text messages and in these messages DEFENDANT stated that he had engaged in a sexual relationship with a 15 year-old minor female (VICTIM 2), approximately three summers ago. The private individual then reported these communications to the FBI, who began communicating with the DEFENDANT in an undercover capacity.

On November 7, 2019 the FBI made contact with DEFENDANT via text messaging using a number provided by the private individual to law enforcement. Within

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 5 of 27

a few text messages the DEFENDANT asked the undercover FBI Agent if he had made contact with "BJ girl". The FBI Agent informed him that he hadn't and asked him how much she charged for sex. The DEFENDANT advised the FBI that she charged $150 for oral sex but that he told her that price was too high. DEFENDANT said they had originally agreed to $50-$60 for oral sex.

When asked how he paid for the sex with VICTIM 2, the DEFENDANT admitted he would provide her with gifts, rides, money and food. When asked if he had sex with her, the DEFENDANT stated he touched her bare vagina and penetrated her vagina with his penis. The DEFENDANT also spontaneously admitted he videotaped VICTIM 2 giving him oral sex. DEFENDANT then sent the FBI a digital link to an internet porn site (PORNHUB) in which he had a private account. The link was titled AK BLOW GIRL hosted Pandazak907's Albums on the website pornhub.com (since removed).

Upon viewing the link, the FBI was able to observe 11 child pornography images of the juvenile female later identified as VICTIM 2, date of birth July, 2002. The DEFENDANT then told the FBI UC that he always ejaculated in the minor's mouth (in reference to the oral sex) and that she was going to turn 18 yrs-old this year (2019). The DEFENDANT also confirmed that though the victim was mad at him currently, she still talks with him. The DEFENDANT then sent the FBI an image of the exposed genitals of a juvenile female he claimed was VICTIM 2. He reiterated how he videotaped her while she was giving him oral sex and that VICTIM 2 was not aware that she was being recorded by the DEFENDANT.

The DEFENDANT then sent the FBI two images of another juvenile female (VICTIM 3). The images depict VICTIM 3 (dressed) posing for a selfie in the mirror of a bathroom as well as an image that the DEFENDANT claimed depicted VICTIM 3's exposed genitals. DEFENDANT claimed the images of VICTIM 3 depicted a 17 yr-old minor. He boasted that he had sex with VICTIM 3 in June 2019, on the hottest day of the year. He said that she came over to his house and they engaged in mutual oral sex and then penile/vaginal sex. He said they had sex three different times that day. DEFENDANT stated when they were done having sex he paid the female $70 and she left his house in a cab, which he also paid for. He also mentioned he met VICTIM 3 on the Tagged app.

When asked, the DEFENDANT identified VICTIM 2 as both "BJ girl" and by her first name, mentioning he met her three years ago. DEFENDANT stated that he was determined to "fuck young pussy" as he was tired of "loose pussy." He also questioned (rhetorically) why "stupid" laws against sex with juveniles were enforced when the girls were already having sex. When asked the age for the youngest girl he had sex with, DEFENDANT claimed she was 16 yrs-old. He then stated that he was actually arrested one year ago for having had sex with a 15 yr-old minor, VICTIM 1. At the time of this disclosure, the FBI was not aware of the DEFENDANT's true identity, or the identity of VICTIM 1, or the fact that the DEFENDANT was represented in a state criminal matter relating to his alleged exploitation of VICTIM 1.

The DEFENDANT stated that VICTIM 1 had told her counselor that the
DEFENDANT had given her drugs (meth) and he was charged with sex assault, drugs,
child porn (CP) and abuse as a result of that disclosure. The DEFENDANT questioned
(rhetorically) why he had been charged with the CP counts when she (VICTIM 1) was
the one that sent the images to him. He then said that she sent him three images of her
bare breasts and bare genitals. The DEFENDANT denied that he provided her with
drugs. The DEFENDANT continued by stating he was currently on ankle monitor
pending the resolution of this investigation. He later described VICTIM 1 as being a 15
yr-old "half white and half Native" female that he using the social media platform
WHISPER.

Referring to his pending case, the DEFENDANT agreed that arrest and
prosecution was the price to be possibly be paid when having sex with minors. The
DEFENDANT also stated that he now only had sex with minor black females as he
believed they would not talk to the police. He then mentioned the images he sent the FBI
were of the black girls he was now having sex with. DEFENDANT went on to explain
the merits of why sex with young black "pussy" was better than with other races. The
DEFENDANT then described "young black pussy" as "yummy" to the FBI in his
undercover identity.

The DEFENDANT advised the FBI that he needed to be careful as there were
many men getting in trouble for having sex with underage girls. DEFENDANT
volunteered that his charges were being dropped and how he believed he would only be
convicted of two misdemeanor sex abuse and CP charges. He stated that the FBI (in his

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 8 of 27

undercover identity) was the only person he had confided this to. The DEFENDANT also mentioned that he lost his job over this investigation and that the police impounded his car, a Honda Element. He stated that he believed he could get his car back after his case was resolved because the police didn't find anything in it but seized it because he had sex with the 15 yrs-old in it (VICTIM 1).

The DEFENDANT continued by stating that VICTIM 1 had skipped school and asked him to meet her. He said they had a quick "fuck" which only lasted two minutes. The DEFENDANT told the FBI that VICTIM 1 had told him that he only had five minutes to have sex with her.

On November 8, 2019 the DEFENDANT continued communicating with the FBI via text. He sent an image of an adult sex worker and asked the FBI if he had ever had sex with her. When asked how he (the FBI UC) could contact "BJ girl" (VICTIM 2), the DEFENDANT sent a screen shot of VICTIM 2's Snapchat username, a screen shot of her Skip the Games (STG) advertisement (to include sexual images of the minor) and her cell phone number. The STG ad was blurry and all that was plainly visible was her ad title "Best head in AK" and the images. The DEFENDANT then complained that the girl would tease him and would let him touch her genitals but not let him have vaginal intercourse (other than the one time his penis accidentally slipped into her vagina). When asked what VICTIM 2 knew him as, DEFENDANT said she knew him by his name, "Alex."

When asked about the video he took of VICTIM 2 giving him oral sex, DEFENDANT explained that the video was on the phone that APD seized in his prior

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS        Page 9 of 27

investigation. In later conversations he mentioned the videos were hidden in secret folders on his Samsung 9+ cellphone (which was seized by the police). He also explained that the police did not know about VICTIM 2 at the time of his arrest in the case related to VICTIM 1, so they didn't know to question him about her at that time. The DEFENDANT stated he was currently using his Samsung Note III.

When asked where VICTIM 2 posted online, DEFENDANT admitted he created a STG profile for her because she didn't know how to do it and she was pestering him for customers. He claimed that he last had sex with her before the spring of 2018. DEFENDANT then provided the FBI with VICTIM 2's KIK app username. The DEFENDANT stated that she owed him for providing her with customers. On this same date the FBI tried communicating with VICTIM 2 on KIK but she did not respond. The DEFENDANT later informed the FBI that she responded to him and informed him that she was with her family and that she would contact the FBI in his undercover capacity later that night. The DEFENDANT ended the conversation by reminding the FBI to videotape the sex he had with VICTIM 2 and then to provide it to him afterwards.

The FBI continued communicating with DEFENDANT in an undercover capacity via text on November 9, 2019. The DEFENDANT asked if VICTIM 2 had communicated with the FBI and he was told that she had not. He then provided the FBI with her Snapchat (SC) username. He denied having her current phone number and believed she had changed it or was using a text app phone number. the FBI asked DEFENDANT about the other 17 yrs-old he had mentioned who he called "Pookie". DEFENDANT said that she was not a prostitute and only had sex with him because she

had an older man fetish (even though he stated earlier he paid her $70 and paid for her cab fare as well). DEFENDANT reiterated how the FBI was the only person he had ever disclosed to about his arrest with the 15 yrs-old minor. He then sent the FBI an image of a woman that he claimed he "fucked raw" and 'forced fucked her mouth" because she was playing hard to get whenever he did favors for her. He said he met her on CL. DEFENDANT continued sending images of prostitutes he claimed he was having sex with and the money he paid them.

On November 10, 2019, the DEFENDANT initiated contact with the FBI by sending a screen shot of VICTIM 2's Tagged profile. On the profile she identified herself as VICTIM 2 (in her true name) and stated she was 23 yrs-old.   This is the first time that law enforcement became aware of a partial identifier for VICTIM 2 (her first name).  In this screen shot of VICTIM 2's Tagged profile, she also includes a picture of her face, her Snapchat username, and that she has been a member of this app since May 11, 2017. In the section where she talks about herself she stated words to the effect that she was 15 yrs-old but that "age doesn't mean anything to her." VICTIM 2 then invited people to contact her no matter their age. DEFENDANT stated that he reactivated his account and he met her in 2017. When asked what type of porn he was into, the DEFENDANT stated he was into young homemade porn, hookers from the lower 48 and "small girls," preferably "Poly, black or Latina."

The DEFENDANT provided the FBI with a direct link to his private account profile on PORNHUB. the FBI viewed the link and DEFENDANT had numerous sexual images of women who he claimed were "Alaska whores."

### D. Statutory Penalties and Other Matters Affecting Sentence

#### 1. Statutory Penalties

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

Count 7: 18 U.S.C. § 2422(b) (Online Enticement or Coercion)

1) A sentence of incarceration from 10 years to life;

2) A period of supervised release from five years to life;

3) A $250,000 fine; and

4) A $100 special assessment.

#### 2. Other Matters Affecting Sentence

##### a. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and

if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be Defendant to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E. Restitution

There is currently no identifiable restitution owed for the offenses of conviction. The Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

### F. Sex Registration / DNA Testing

Defendant understands that by pleading guilty, defendant will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, he will be Defendant to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person his sex offender registration information. Defendant understands that he will be Defendant to possible federal and state penalties for failure to comply with any such sex offender registration requirements. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon his release from confinement following conviction. As a condition of supervised release, defendant shall initially register with the state sex offender registration in Alaska, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update his registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

### G.    Voluntary Abandonment

Personal property to be voluntarily abandoned under this agreement include the following items:  All items seized by law enforcement as evidence in this matter.

The defendant warrants that the defendant had sole possession and ownership of the property referenced above, and that there are no claims to, or liens or encumbrances on the property referenced above.  Defendant will take all steps as requested by the United States to pass clear title to the property, including but not limited to, executing documents, and testifying truthfully in any legal proceeding.  The defendant agrees to forever abandon and disclaim any right, title, and interest the defendant may have in the property described above, and warrant to the Court free, clear and unencumbered title to the aforementioned property.

## III.    ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A.    Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose.  The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty.  The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.  Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section.

### 1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### 2. U.S.S.G. § 2G1.1 cross-referenced to §2G2.1

The defendant stipulates that the offense conduct cross references to U.S.S.G §2G2.1 pursuant to §2G1.3(c)(1), and that the following specific offense characteristics apply: §2G2.1(b)(1) (under 16); (b)(2) commission of a sex act); (b)(3) (knowing distribution); and (b)(6) (use of a computer), resulting in an adjusted offense level of no less than 40 prior to any adjustment for acceptance of responsibility.

### B. Sentencing Recommendations

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range

calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II.C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

### C.      Conditions of Supervised Release

The parties agree that the following Special Conditions of supervised release listed below, in addition to any other Standard and Special Conditions which the Court deems appropriate, shall be applied in this case:

#### 1.      Pornography Prohibition

The defendant shall not possess any obscene material, child pornography, child erotica, or nude images of minors.  Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

#### 2.      Sexual Disorders Treatment

The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer.  The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

### 3. No Unsupervised Contact with Minors

The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer. In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to the contact, then this condition is not intended to prevent approval of the contact.

### 4. Consent to Searches

The defendant shall submit to the search by the probation officer of his person, vehicle, office/business, residence, and property, including any computer systems and Internet enabled devices, whenever the probation officer had a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving the defendant. Other law enforcement may assist as necessary. The defendant shall submit to the seizure of contraband found by the probation officer. The defendant shall warn other occupants the premises may be Defendant to searches.

### 5. Computer Monitoring

The defendant shall consent, at the direction of the probation officer, to having installed on his computer(s), cellular telephones, electronic devices, and any hardware or software, systems to monitor his use of these items. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 18 of 27

monitoring software placed on his computer(s), phones and electronic devices. To promote the effectiveness of this monitoring, the defendant shall disclose in advance of its use all cellular phones, electronic devices, computers, and any hardware to the Probation Officer and may not access or use any undisclosed equipment.

### 6. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve no less than two additional years of imprisonment. The defendant also understands that if he commits any felony offense under Chapter 109A, 110, or 117, or section 1201 or 1591 of the United States Code, the Court shall revoke the term of supervised release and require the defendant to serve a term of no less than five years imprisonment under 18 U.S.C. § 3583(e)(3) and (k) without regard to the exceptions contained therein.

## IV. ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's plea(s) and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the Defendant of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth in Section II.C.

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 19 of 27

out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements. The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V.   WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A.   Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets Defendant to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial –

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS             Page 20 of 27

the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

– The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

– The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

– The right to contest the validity of any searches conducted on the defendant's property or person.

### B. Appellate Rights

The defendant waives the right to appeal the convictions resulting from the entry of guilty pleas to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's convictions and guilty plea[s], including arguments that the statutes to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

### D.    Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

### E.    Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 22 of 27

that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

### F.     Potential Plea before Magistrate Judge

The defendant has the right to enter a plea before a United States District Court Judge. The Defendant, defense counsel, and the attorney for the Government consent to have the Defendant's plea(s) taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea(s) of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case. The defendant agrees that if the defendant is pleading guilty to an offense described in Title 18, United States Code, Section 3142(f)(1)(A), (B), or (C) (involving a crime of violence, a crime punishable by a maximum sentence of life or death, or a Title 21 controlled substance offense for which the maximum sentence is ten years or more), that the defendant will remand into custody on the day that he/she agrees in court to the factual

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 23 of 27

basis supporting the plea. The defendant further agrees not to seek release at any time between the date of the guilty plea before the Magistrate Judge and the date of imposition of sentence before the District Court Judge.

## VI.  ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(7) and (8),  this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII.  THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, ALEX REQUINA ASINO, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my pleas.  There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement.  If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty pleas.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty.  If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my pleas. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty

pleas. My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 7 and 8 - Online Enticement or Coercion, in violation of 18 U.S.C. § 2422(b) of the Indictment.

DATED: 05/05/2021

x _Alex R. Asino_
ALEX REQUINA ASINO
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS          Page 26 of 27

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my pleas. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty

DATED: _05/13/2021_

SAMUEL EILERS
Attorney for ALEX REQUINA ASINO

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: _05/17/2021_

E. BRYAN WILSON
United States of America
Acting United States Attorney

U.S. v. ALEX REQUINA ASINO
3:19-cr-00138-SLG-MMS        Page 27 of 27