JOHN E. KUHN JR.
United States Attorney

ADAM ALEXANDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>ALEX REQUINA ASINO,<br><br>        Defendant. | No. 3:19-cr-00138-JMK-MMS |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION** ............360 MONTHS (CONCURRENT TO 3AN-18-09089CR)
**SUPERVISED RELEASE** ................................................................................LIFE
**AVAA ASSESSMENT** ............................................................................$9,000
**RESTITUTION** ........................................................................................ N/A
**FINE** .................................................................................................. $50,000

## I. INTRODUCTION

The Defendant is an opportunistic, recidivist sex offender who has actively and directly exploited some of the most vulnerable members of our community even after having been charged by the State of Alaska for similar conduct and released by Alaska state courts back into the community on pre-trial release. The Defendant's advisory guideline range would result in a life term of imprisonment. While the imposition of a life term would be well-founded on the record before the Court, the United States is recommending a one level variance to offense level 42 and the imposition of an adjusted low-end guideline sentence of 360 months imprisonment to be followed by a life term of supervised release, which is sufficient but not greater than necessary to reflect the seriousness of the offense and protect the public from further crimes of the Defendant.

Regarding sentencing, the Supreme Court states, "the Guidelines should be the starting point and initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id., 552 U.S. 38, 52 (2007). This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." Nelson v. United States, 129 S. Ct. 890, 891-92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider

the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Another factor that Section 3553(a) considers are similar sentences for similarly situated defendants for to avoid sentence disparities. 18 U.S.C. § 3553(a)(6). Due consideration of these varying factors necessitates a sentence lower than the advisory guideline term of life imprisonment, but not less than 360 months followed by a life term of supervised release.

## II. FACTS

The final pre-sentence report concisely summarizes the relevant facts. Doc. 59 (sealed) at ¶¶ 6-24. The Court can also rely on the following factual basis, excerpted from the plea agreement in this matter and stipulated to by the Defendant at his change of plea.

On September 27th, 2019, the defendant was arrested by the Anchorage Police Department and charged by the State of Alaska with one count of Misconduct Involving Controlled Substances in the First Degree for delivering schedule 1A substances to a minor in violation of Alaska Statute 11.71.010(a)(1), one count of Sexual Abuse of a Minor in the Second Degree in violation of AS 11.41.436(a)(1) and one count of possession of child pornography in violation of AS 11.61.127 in case 3AN-18-09089CR.

The information filed by the District Attorney's Office in that matter alleged that on September 26, 2018, the Anchorage Police Department (APD) responded to a report of a suicidal teenager at a High School in Anchorage, Alaska (VICTIM 1). Through the course of the investigation APD learned that VICTIM 1 had met an individual later identified as the defendant through the online social media applications Snapchat and Whisper, and later met him at his vehicle where the defendant engaged in sexual penetration. APD recorded a consensually monitored conversation between VICTIM 1 and the defendant in the course of that investigation, during which time the defendant made admissions regarding distributing drugs to VICTIM 1 and knowing her age. The defendant was later interviewed by APD and made admissions regarding his exchange of narcotics for sex with VICTIM 1; stated that he believed that she was 16 years of age rather than 15; and said that VICTIM 1 "came to me. . . I never forced her . . . she never said no to me – it's all on her."

Over the objections of the state prosecutor, the State District Court Judge presiding over the defendant's arraignment set bail at $10,000 unsecured bond, $1,000 cash performance bond, and supervision through electronic monitoring by the pre-trial enforcement division of the Alaska Department of Corrections. He was assessed by the pre-trial enforcement division at a level 1, very low risk of reoffending, which carries with it a presumption of release on his own recognizance.

On November 7, 2019, agents with the Federal Bureau of Investigation (FBI) learned that the defendant, under the guise of his username "Pandazak907" (from

U.S. v. ASINO
3:19-cr-00138-JMK-MMS
Page 4 of 16
Case 3:19-cr-00138-JMK-MMS   Document 66   Filed 03/22/22   Page 4 of 16

USASexGuide.nl), had been communicating with a private individual acting at their own direction via text messages and in these messages defendant stated that he had engaged in a sexual relationship with a 15 year-old minor female (VICTIM 2), approximately three summers ago. The private individual then reported these communications to the FBI, who began communicating with the defendant in an undercover capacity.

On November 7, 2019 the FBI made contact with the defendant via text messaging using a number provided by the private individual to law enforcement. Within a few text messages the defendant asked the undercover FBI Agent if he had made contact with "BJ girl". The FBI Agent informed him that he hadn't and asked him how much she charged for sex. The defendant advised the FBI that she charged $150 for oral sex but that he told her that price was too high. The defendant said they had originally agreed to $50-$60 for oral sex.

When asked how he paid for the sex with VICTIM 2, the defendant admitted he would provide her with gifts, rides, money and food. When asked if he had sex with her, the defendant stated he touched her bare vagina and penetrated her vagina with his penis. The defendant also spontaneously admitted he videotaped VICTIM 2 giving him oral sex. defendant then sent the FBI a digital link to an internet porn site (PORNHUB) in which he had a private account. The link was titled AK BLOW GIRL hosted Pandazak907's Albums on the website pornhub.com (since removed).

Upon viewing the link, the FBI was able to observe 11 child pornography images of the juvenile female later identified as VICTIM 2, date of birth July, 2002. The

defendant then told the FBI UC that he always ejaculated in the minor's mouth (in reference to the oral sex) and that she was going to turn 18 yrs-old this year (2019). The defendant also confirmed that though the victim was mad at him currently, she still talks with him. The defendant then sent the FBI an image of the exposed genitals of a juvenile female he claimed was VICTIM 2. He reiterated how he videotaped her while she was giving him oral sex and that VICTIM 2 was not aware that she was being recorded by the defendant.

The defendant then sent the FBI two images of another juvenile female (VICTIM 3). The images depict VICTIM 3 (dressed) posing for a selfie in the mirror of a bathroom as well as an image that the defendant claimed depicted VICTIM 3's exposed genitals. defendant claimed the images of VICTIM 3 depicted a 17 yr-old minor. He boasted that he had sex with VICTIM 3 in June 2019, on the hottest day of the year. He said that she came over to his house and they engaged in mutual oral sex and then penile/vaginal sex. He said they had sex three different times that day. defendant stated when they were done having sex he paid the female $70 and she left his house in a cab, which he also paid for. He also mentioned he met VICTIM 3 on the Tagged app.

When asked, the defendant identified VICTIM 2 as both "BJ girl" and by her first name, mentioning he met her three years ago. defendant stated that he was determined to "fuck young pussy" as he was tired of "loose pussy." He also questioned (rhetorically) why "stupid" laws against sex with juveniles were enforced when the girls were already having sex. When asked the age for the youngest girl he had sex with, defendant claimed

she was 16 yrs-old. He then stated that he was actually arrested one year ago for having had sex with a 15 yr-old minor, VICTIM 1. At the time of this disclosure, the FBI was not aware of the defendant's true identity, or the identity of VICTIM 1, or the fact that the defendant was represented in a state criminal matter relating to his alleged exploitation of VICTIM 1.

The defendant stated that VICTIM 1 had told her counselor that the defendant had given her drugs (meth) and he was charged with sex assault, drugs, child porn (CP) and abuse as a result of that disclosure. The defendant questioned (rhetorically) why he had been charged with the CP counts when she (VICTIM 1) was the one that sent the images to him. He then said that she sent him three images of her bare breasts and bare genitals. The defendant denied that he provided her with drugs. The defendant continued by stating he was currently on ankle monitor pending the resolution of this investigation. He later described VICTIM 1 as being a 15 yr-old "half white and half Native" female that he using the social media platform WHISPER.

Referring to his pending case, the defendant agreed that arrest and prosecution was a possible consequence of sexually exploiting minors. The defendant also stated that he now only had sex with minor black females as he believed they would not talk to the police. He then mentioned the images he sent the FBI were of the black girls he was now having sex with. defendant went on to explain the merits of why sex with young black "pussy" was better than with other races. The defendant then described "young black pussy" as "yummy" to the FBI in his undercover identity.

U.S. v. ASINO
3:19-cr-00138-JMK-MMS

Page 7 of 16
Case 3:19-cr-00138-JMK-MMS   Document 66   Filed 03/22/22   Page 7 of 16

The defendant advised the FBI that he needed to be careful as there were many men getting in trouble for having sex with underage girls. The defendant volunteered that his charges were being dropped and how he believed he would only be convicted of two misdemeanor sex abuse and CP charges. He stated that the FBI UC (in his undercover identity) was the only person he had confided this to. The defendant also mentioned that he lost his job over this investigation and that the police impounded his car, a Honda Element. He stated that he believed he could get his car back after his case was resolved because the police didn't find anything in it but seized it because he had sex with the 15 year-old juvenile in it (VICTIM 1).

The defendant continued by stating that VICTIM 1 had skipped school and asked him to meet her. He said they had a quick "fuck" which only lasted two minutes. The defendant told the FBI that VICTIM 1 had told him that he only had five minutes to have sex with her.

On November 8, 2019 the defendant continued communicating with the FBI via text. He sent an image of an adult sex worker and asked the FBI UC if he had ever had sex with her. When asked how he (the FBI UC) could contact "BJ girl" (VICTIM 2), the defendant sent a screen shot of VICTIM 2's Snapchat username, a screen shot of her Skip the Games (STG) advertisement (to include sexual images of the minor) and her cell phone number. The STG ad was blurry and all that was plainly visible was her ad title "Best head in AK" and the images. The defendant then complained that the girl would tease him and would let him touch her genitals but not let him have vaginal intercourse

U.S. v. ASINO
3:19-cr-00138-JMK-MMS

Page 8 of 16
Case 3:19-cr-00138-JMK-MMS   Document 66   Filed 03/22/22   Page 8 of 16

(other than the one time his penis accidentally slipped into her vagina). When asked what VICTIM 2 knew him as, defendant said she knew him by his name, "Alex."

When asked about the video he took of VICTIM 2 giving him oral sex, the defendant explained that the video was on the phone that APD seized in his prior investigation. In later conversations he mentioned the videos were hidden in secret folders on his Samsung 9+ cellphone (which was seized by the police). He also explained that the police did not know about VICTIM 2 at the time of his arrest in the case related to VICTIM 1, so they didn't know to question him about her at that time. The defendant stated he was currently using his Samsung Note III.

When asked where VICTIM 2 posted online, defendant admitted he created a STG profile for her because she didn't know how to do it and she was pestering him for customers. He claimed that he last had sex with her before the spring of 2018.

The defendant then provided the FBI with VICTIM 2's KIK app username. The defendant stated that she owed him for providing her with customers. On this same date the FBI tried communicating with VICTIM 2 on KIK but she did not respond. The defendant later informed the FBI that she responded to him and informed him that she was with her family and that she would contact the FBI in his undercover capacity later that night. The defendant ended the conversation by reminding the FBI UC to videotape the sex he had with VICTIM 2 and then to provide it to him afterwards.

The FBI continued communicating with defendant in an undercover capacity via text on November 9, 2019. The defendant asked if VICTIM 2 had communicated with

the FBI and he was told that she had not. He then provided the FBI with her Snapchat (SC) username. He denied having her current phone number and believed she had changed it or was using a text app phone number. the FBI asked defendant about the other 17 yrs-old he had mentioned who he called "Pookie". The defendant said that she was not a prostitute and only had sex with him because she had an older man fetish (even though he stated earlier he paid her $70 and paid for her cab fare as well). The defendant reiterated how the FBI UC was the only person he had ever disclosed to about his arrest with the 15 year-old minor. He then sent the FBI UC an image of a woman that he claimed he "fucked raw" and 'forced fucked her mouth" because she was playing hard to get whenever he did favors for her. He said he met her on Craigslist. The defendant continued sending images of prostitutes he claimed he was having sex with and the money he paid them.

On November 10, 2019, the defendant initiated contact with the FBI UC by sending a screen shot of VICTIM 2's Tagged profile. On the profile she identified herself as VICTIM 2 (in her true name) and stated she was 23 years old. This is the first time that law enforcement became aware of a partial identifier for VICTIM 2 (her first name). In this screen shot of VICTIM 2's Tagged profile, she also includes a picture of her face, her Snapchat username, and that she has been a member of this app since May 11, 2017. In the section where she talks about herself she stated words to the effect that she was 15 yrs-old but that "age doesn't mean anything to her." VICTIM 2 then invited people to contact her no matter their age. The defendant stated that he reactivated his account and

he met her in 2017. When asked what type of porn he was into, the defendant stated he was into young homemade porn, hookers from the lower 48 and "small girls," preferably "Poly, black or Latina."

The defendant provided the FBI with a direct link to his private account profile on PORNHUB. the FBI viewed the link and defendant had numerous sexual images of women who he claimed were "Alaska whores."

Screen captures of the defendant's conversation with the UC FBI agent can be seen below where the defendant discusses using a "burner phone" and "anonymous account" to evade law enforcement scrutiny as he hoped to continue engaging in child exploitation conduct.



U.S. v. ASINO
3:19-cr-00138-JMK-MMS

## III. GUIDELINES CALCULATION

### 1. Stipulation

The defendant has stipulated that the following specific offense characteristics apply to his offenses of conviction: USSG 2G1.3 sections (b)(2)(B) (undue influence); (b)(3) (use of a computer); (b)(4) (commercial sex act) resulting in an adjusted base offense of no less than 40 prior to any offset for acceptance of responsibility. The defendant also stipulates to the fact that the offense conduct at issue in this matter was committed while he was on release in a prior matter prosecuted by the State of Alaska in case 3AN-18-09089CR.

### 2. The PSR Correctly Calculates the Advisory Guideline Range

The PSR correctly calculates the total offense level as 45 (reduced to the maximum 43) after calculating the applicable offense characteristics and grouping to reflect the Defendant's conduct towards VICTIMS 1, 2 and 3. Doc. 59 (Final PSR) at ¶¶30-60. Because the total offense level exceeds 43, the offense level is treated as 43. U.S.S.G. Ch. 5, Pt. A, Application Note 2.

### 3. This sentence should run concurrent to any imposed in the state matter

The defendant's advisory guideline sentencing range reflects and adjusts for the conduct involving a victim charged in the earlier state matter pursuant to U.S.S.G. §1B1.3(a). PSR ¶¶ 6-7, 39-45, 54 (Count 7A: Victim A). Given the fact that "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction," "the sentence of the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. §5G1.3(c)

## IV. STATUTORY CRITERIA AND RECOMMENDED SENTENCE

Given the undisputed record before the court at sentencing in this matter, the primary sentencing consideration should be the two primary sentencing considerations should be the specific deterrence of this defendant and the protection of the public from any further crimes he may commit. 18 U.S.C. §3553(a)(2)(B) and (C). The nature and circumstances of the offense conduct and the history and characteristics of the defendant dictate the imposition of a below guideline sentence of 360 months.

### 1. Nature and Circumstances of the Offense

The development of § 2422(b) reflects congressional intent to impose increasingly harsh penalties on those who entice, or attempt to entice, minors to engage in unlawful sexual activity. Congress added § 2422(b) in the Telecommunications Act of 1996 to specifically prohibit the enticement of minors, and Congress imposed a maximum penalty of ten years. Pub.L. No. 104–104, 110 Stat. 56 (Feb. 8, 1996).

Since 1996, Congress has increased the maximum sentence for violations of § 2422(b) three times. See Pub.L. No. 105–314, § 102, 112 Stat. 2974, 2975–76 (Oct. 30, 1998) (increasing the maximum penalty to 15 years); Pub.L. No. 108–21, 117 Stat. 650, 652–53 (Apr. 30, 2003) (increasing the maximum penalty to 30 years and adding a five-year mandatory minimum); Pub.L. No. 109–248, § 203, 120 Stat. 587, 613 (July 27, 2006) (increasing the maximum penalty to life in prison and increasing the mandatory minimum to ten years). These penalty increases "suggest[ ] a crystallizing vision on Congress's part of the need for stern punishment in this milieu." United States v. Dwinells, 508 F.3d 63, 69 (1st Cir.2007). United States v. Shill, 740 F.3d 1347, 1352 (9th Cir. 2014).

U.S. v. ASINO
3:19-cr-00138-JMK-MMS

It is axiomatic that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982). The Court in Ferber went on to note that "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." Id. at 758 n. 9. Put simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." Kennedy v. Louisiana, 554 U.S. 407, 468 (2008) (quotation marks omitted).

"Retribution is a valid penological goal." Glossip v. Gross, 135 S. Ct. 2726, 2769 (2015). As the Eleventh Circuit explained in Irey: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. The Irey court cited the Senate Report regarding this provision:

> This purpose--essentially the "just deserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

Id. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. See Gregg v. Georgia, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)).

Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a sentence of no less than 360 months to serve followed by a life term of supervised release.

2. **History and Characteristics of the Defendant**

The history and characteristics of the defendant are inseparable from and defined by the children he has exploited for his own sexual gratification and the surpassing perversity of his desire to aid and abet others so similarly inclined. His willingness to do so even after being arrested, charged (and released) by the State of Alaska for the conduct involving Victim 1 should give this court no confidence that he will ever choose to meaningfully grapple with his own underlying pathologies, and as a result this court should have correspondingly little hesitation to impose a life sentence, much less the adjusted, low end guideline sentence of 360 months as recommended by the United States. Our District's Chief Judge has imposed a higher sentence on another similarly situated defendant for far less egregious conduct, which should likewise comfort the court regarding potential sentencing disparities. [1] While there is nigh-universal disapproval amongst 9th Circuit judicial officers for the guideline sentences promulgated under U.S.S.G. §2G2.2 for "mere" child pornography possession offenses, there is a concomitant understanding and logical corollary that sentencing for the "much more serious offense" of child exploitation conduct involving direct sexual exploitation of hands-on victims should be proportionately more severe. United States v. Henderson, 649 F.3d 955, 965 (9th Cir. 2011) (Berzon, J. conc.).

---

[1] See U.S. v. William Patrick King 3:17-cr-00082-SLG. Mr. King, a recidivist sex offender, received a sentence of 420 months, with 96 consecutive to another federal sentence for non-contact enticement conduct.

U.S. v. ASINO
3:19-cr-00138-JMK-MMS

## V. CONCLUSION

The vulnerable children in our community exploited by the defendant will spend the rest of their lives grappling with the consequences of his selfish and debased conduct. No sentence that this court can impose could unravel the damage he has done, but this court can to some degree remediate the miscarriage of justice resulting from his release on his state case and more importantly assure that he will not be capable of endangering children and young women in our District or elsewhere. The sentence recommended by the United States affords the defendant a privilege he has denied to his victims; the prospect of a life following the inevitable consequences of his actions.

RESPECTFULLY SUBMITTED March 22, 2022 at Anchorage, Alaska.

JOHN E. KUHN JR.
United States Attorney

/s/ Adam Alexander
ADAM ALEXANDER
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2022
a true and correct copy of the foregoing
was served electronically on:

SAMUEL LEE EILERS
Assistant Federal Defender
District of Alaska

/s/ Adam Alexander
Office of the U.S. Attorney

U.S. v. ASINO
3:19-cr-00138-JMK-MMS