Samuel L. Eilers
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: samuel_eilers@fd.org

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                                   Plaintiff,<br><br>vs.<br><br>ALEX REQUINA ASINO,<br><br>                                   Defendant. | Case No. 3:19-cr-00138-001-JMK<br><br>**SENTENCING MEMORANDUM** |

## <u>RECOMMENDATION</u>

Alex Requina Asino, through counsel, requests a sentence of 188 months in prison followed by twenty years of supervised release with the many rigorous special conditions recommended in the PSR including, among other things, necessary mental health and sex offender treatment. A custodial sentence of 180 months is reached after fair assessment of the § 3553(a) factors and a conclusion that the Guidelines grossly overstate the danger Mr. Asino poses to the public. The proposed sentence is undoubtedly substantial and reflects the seriousness of the offense while protecting the community from future similar conduct by Mr. Asino, and provides for his rehabilitation and reintegration into the community. The federal sentence "shall" be imposed concurrent to pending, related state case 3AN-18-09089CR pursuant to U.S.S.G. § 5G1.3(c). Mr. Asino is in primary federal custody and seeks designation to a BOP institution that offers SOMP treatment services.

## SENTENCING FACTORS

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing.[1] "The Guidelines are not only ***not mandatory*** on sentencing courts; they are also not to be ***presumed*** reasonable."[2] "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."[3] In this case, the Guidelines grossly overstate the danger Mr. Asino poses to the public. The proposed sentence of 180 months in prison, which is well below the Guidelines, is nevertheless substantial and reflects the seriousness of the offense while providing for Mr. Asino's rehabilitation and eventual reintegration into the community.

### 1. History and Characteristics of Mr. Asino

It is apparent that Mr. Asino suffered neglect throughout childhood that left him emotionally stunted, deeply insecure, and susceptible to significant mental health issues as he entered adolescence and that continue to plague him to this day. Deprived of any semblance of a nurturing home, Mr. Asino and his siblings were subject to emotional abuse by their father until his death when Mr. Asino was twelve years old. As the youngest child without a structured or supportive environment, Mr. Asino never learned

---

[1] *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).
[2] *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). *See also United States v. Gall*, 552 U.S. 38, 48-50 (2007); *Rita v. United States*, 551 U.S. 338, 350-51 (2007).
[3] *Nelson*, 555 U.S. at 351.

the skills necessary to develop meaningful social relationships. His isolation during youth was compounded by a language barrier and developmental delays at school, which further ostracized Mr. Asino from his peers. The closest thing to a male role model for Mr. Asino was his older brother who introduced him, at age nine, to pornography as an obsessive coping mechanism to deal with his extreme loneliness in life. In high school, Mr. Asino twice tried to kill himself—once by Tylenol overdose and once by hanging.[4]

After high school, Mr. Asino moved from Hawaii to Anchorage in 2007. In the ten years that followed, Mr. Asino eked his way through life working at entry-level jobs. He has one prior conviction, from 2011, for misdemeanor shoplifting. Mr. Asino's isolation and profound loneliness have continued to plague him into adulthood. He does not have any friends, and his interactions with females have largely consisted of paid encounters. Mr. Asino has an extremely shy and severely depressed disposition. He presents as an emotionally immature individual with deep-seated insecurities who is mired in shame for exploiting underage girls in a perverse attempt to gratify his ego and cultivate confidence.

Mr. Asino has been in continuous custody for nearly 30 months now. For the first time in his life, Mr. Asino is in a structured environment where he can begin to develop the interpersonal skills necessary to develop healthy relationships and function as an adult in society, address his underlying issues, and work toward rehabilitation. Although Mr.

---

[4] Alaska DOC records reflect that Mr. Asino was evaluated in custody by Health and Rehabilitative Services on May 2, 2020, and is suspected of depressive disorder and Adjustment Disorder with Depressed Mood. Mr. Asino was prescribed antidepressants after another suicide attempt  PSR at ¶ 77.

Asino is presently reluctant to address mental health issues with prescription medication, he has demonstrated remarkable initiative and efforts toward sex offender treatment through the ACC Transformational Living Community (TLC) Program. Since being accepted into the TLC Program in March 2020, Mr. Asino completed well over 500 hours of rehabilitation coursework, created a tailored, 48-page Relapse Prevention Plan, and continues to be one of the TLC Program's most advanced students. He is fully dedicated to ongoing treatment and, critically, recognizes that rehabilitation is a lifelong process.[5]

## 2. <u>Nature and Circumstances of the Offense, Seriousness of the Offense, Respect for the Law, and Just Punishment</u>

Mr. Asino recognizes that his offense conduct in this case is extremely serious. In sum, Mr. Asino used social media / dating apps to make contact with and then sexually exploit three minor female victims ranging in age from fifteen to seventeen, created and distributed video/image of the sexual exploitation, and then boasted about the sexual exploitation to an undercover FBI agent while encouraging that undercover agent to do the same. For these crimes, Mr. Asino now faces a statutory mandatory minimum of 120 months in prison.[6] The proposed sentence of 180 months is even more substantial and adequately reflects the seriousness of the offense. Following his arrest on this federal case, Mr. Asino accepted responsibility for his actions, pleaded guilty, and has undertaken significant efforts toward personal development and rehabilitation in custody.

---

[5] *See* Exhibit A [Rehabilitation Letter]; Exhibit B [Certificates and Achievements].
[6] PSR at ¶ 86 (citing 18 U.S.C. § 2422(b)).

The proposed sentence of 180 months recognizes that Mr. Asino's offense conduct is somewhat aggravated by his intervening arrest in Alaska state case 3AN-18-09089CR relating to exploitation of the first victim. Mr. Asino was inexplicably released on state bond with minimal conditions of supervision. The Court should be careful not to place too much emphasis on the intervening state arrest as though Mr. Asino committed a new sex offense after a prior *convictio**n* where a sentence had been imposed and completed to ostensibly achieve correction and rehabilitation. This is particularly relevant in a case involving a sex offense, such as Mr. Asino's, where sex offender treatment and other corrective and rehabilitation measures are critical in addressing underlying issues and reducing a defendant's risk of recidivism to an acceptable level before release. Congress recognizes this arrest/conviction distinction by increasing the mandatory minimum to 300 months for sexual exploitation of children only after a prior *conviction* for a sex offense.[7]

Comparing victims of sexual exploitation is not a pleasant task, but it should nevertheless be acknowledged that the minor victims in this case were not infants, toddlers, or prepubescent. Rather, the victims were of an age where teenagers typically become sexually active, and it appears there was willing participation in interactions with Mr. Asino. He realizes that a fifteen or seventeen-year-old girl cannot legally consent to a sexual encounter, and the proposed sentence of 180 months in prison reflects the extreme seriousness of the offense and inexcusable sexual exploitation of the minor victims.

---

[7] *See* 18 U.S.C. § 2251(e).

As demonstrated by Mr. Asino's commitment to and achievements in the TLC Program over the past two years, he is an ideal candidate for continued sex offender treatment at a specialized BOP institution. Mr. Asino has not received a single disciplinary action while in custody. He does not have anti-authority issues or portray himself as a victim. Mr. Asino thrives in a structured setting. This suggests that Mr. Asino will be successful on an extended term of supervised release with the rigorous special conditions recommended in the PSR including, among other things, necessary mental health and sex offender treatment. A sentence that is excessive promotes disrespect for the law and provides unjust punishment. Defense counsel submits that a sentence of a quarter century or more is excessive under the circumstances. The proposed sentence of 180 months is sufficient, substantial, and reflects the seriousness of the offense while providing for Mr. Asino's rehabilitation and reintegration into society.

### 3. Adequate Deterrence to Criminal Conduct

Empirical research shows no relationship between sentence length and deterrence.[8] Overall, research shows that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers.[9] "There is generally no significant association between perceptions of

---

[8] *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29 (2006).
[9] *See id.*

punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms."[10]

For these reasons, a sentence of 180 months is appropriate. No evidence supports the argument that people in Mr. Asino's shoes before and during the commission of the offense will pay attention to the sentence in this case and be affected by it. In general, sex offenders know that they could be sent to prison if caught. A prison sentence will not send a message to anyone about the consequences of committing a sex offense of this type. General deterrence will be achieved with a sentence of 180 months. The general public will understand the lasting damage that this type of conduct creates, and the defendant will be deterred from repeating this behavior in the future.

### 4. Avoid Unwarranted Sentence Disparities

In determining the appropriate sentence, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[11] In assessing this factor, defense counsel cautions the Court against relying on overly-broad and potentially misleading statistics. Of note, the PSR references "Judiciary Sentencing Information" in asserting that the median length of imprisonment for offenders in Criminal History Category I who are sentenced with the maximum Base Offense Level of 43 under U.S.S.G. § 2G2.1 is 360 months.[12]

---

[10] Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).
[11] 18 U.S.C. § 3553(a)(7).
[12] PSR at 3. Mr. Asino did not previously object to the inclusion of these statistics in the Final PSR because they were not included in the Draft PSR. The precise source for the PSR's statistical analysis

The applicable Guideline, U.S.S.G. § 2G2.1, encompasses a sweeping range of conduct, such as using force against a minor, rendering a minor unconscious, and threatening a minor with death, serious bodily injury, or kidnapping, in the commission of a sexual act.[13] The Guideline also encompasses a wide swath of any number of potential victims, including infants, toddlers, and prepubescent minors.[14] Because of the varying conduct and victims subsumed within U.S.S.G. § 2G2.1, which would all result in the maximum Base Offense Level of 43 as in Mr. Asino's case, the Court cannot properly rely on the PSR or USSG statistics to find that 180 months would result in an unwarranted disparity.

While there are no co-defendants in Mr. Asino's case, it is entirely proper for the Court to take notice of other, similar cases prosecuted in this District in determining an appropriate sentence. Thus, the parties undertook significant efforts to find a comparable case for the Court's consideration. The government, for its part, cites to *United States v. King*, 3:17-cr-00082-SLG, where the defendant received a sentence of 420 months. However, the defendant in that case had multiple prior sex-offense convictions, as well as multiple prior assault convictions, and on the instant offense victimized prepubescent minors using numerous threats, extortion, and blackmail tactics while on probation for one of his prior sex offenses and while evading sex offender registration requirements. As

---

remains unclear to defense counsel. However, according to the United States Sentencing Commission, the nationwide median length of imprisonment for an offender in Criminal History Category I sentenced under U.S.S.G. § 2G2.1 during the same timeframe is 240 months. *See* United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2016-2020, Guideline § 2G2.1, Criminal History Category I, *available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard.

[13] *See* U.S.S.G. § 2G2.1(b)(2)(B), app. n. 2.

[14] *See* U.S.S.G. §§ 2G2.1(b)(1), (b)(4), (d)(1).

Case 3:19-cr-00138-JMK-MMS   Document 68   Filed 03/23/22   Page 8 of 12

a result, the defendant was sentenced to a mandatory-minimum of 420 months on a somewhat related case in the Middle District of Florida before Chief Judge Gleason imposed the same sentence but ran 96 months consecutively in this District. *King* is in no way analogous to Mr. Asino's case and is thus inapposite for meaningful consideration.

A much more appropriate case for the Courts' parity analysis is *United States v. Walls*, 3:18-cr-00076-SLG, where the defendant's criminal history included a prior delinquency adjudication on a charge of aggravated child molestation. With respect to the instant offense, the defendant was deemed by the government to be "a serial child sex offender who used popular social media applications to target, exploit[,] and abuse [at least three] juvenile females in Anchorage" and who had a "compulsion [] so strong that this predatory behavior continued even after the Anchorage Police Department served a search warrant at his [Army] barracks and advised him of their pending investigation."[15] In that case, involving a defendant in his late twenties who abused three minor victims aged from fourteen to sixteen, Chief Judge Gleason imposed a sentence of 180 months.

## 5. Provide Restitution to Victims

Mr. Asino is subject to the provisions of the AVAA of 2018 and joins Probation in recommending a $3000 assessment per victim for a total of $9000.[16]

/ / /

/ / /

---

[15] *United States v. Walls*, 3:18-cr-00076-SLG, Dckt. 51 [Sentencing Memorandum by USA].
[16] PSR at 1, ¶ 98 (citing 18 U.S.C. § 2259A).

## CONCURRENT TERM

"If . . . a state term of imprisonment is anticipated to result from another case that is relevant conduct to the instant offense of conviction under the provisions of subsection[] . . . (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."[17] Mr. Asino is facing an anticipated term of imprisonment in Alaska state case 3AN-18-09089CR.[18] The state case involves "Victim 1," and the federal Indictment charges Mr. Asino with conduct related to "Victim 2" and "Victim 3." However, the applicable Guideline, U.S.S.G. § 2G2.1, provides that if the offense involved more than one minor, the Guidelines shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.[19] Furthermore, the Guideline directs that if the relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction or not, each such minor shall be treated as if contained in a separate count of conviction.[20] In short, "Victim 1" is grouped with "Victim 2" and "Victim 3" under the Guidelines even though "Victim 1" is not charged in the federal Indictment.[21] Because grouping of all three victims is required under the Guidelines,[22] the state case is relevant conduct under U.S.S.G. § 1B1.3(a)(3).

---

[17] U.S.S.G. § 5G1.3(c).
[18] PSR at ¶ 69.
[19] PSR at ¶ 29 (citing § U.S.S.G. 2G2.1(d)).
[20] *Id.* (citing U.S.S.G. § 2G2.1(d)(1), app. n. 6).
[21] *See* PSR ¶¶ 29, 39-45, 54.
[22] *See* U.S.S.G. §§ 3D1.2(d) (requiring grouping where "the offense behavior is ongoing and continuous in nature and the offense guideline is written to cover such behavior"), 2G2.1(d)(1) (offense guideline).

Therefore, U.S.S.G. § 5G1.3(c) applies and the sentence for the instant offense "shall be imposed to run concurrently" to Alaska state case 3AN-18-09089CR.

## BOP DESIGNATION

Mr. Asino is in primary federal custody and will serve his term of imprisonment in a BOP institution. The BOP recognizes sex offenders as a vulnerable population within a prison setting. "Institutional assignment, unit management, Psychology Treatment Programs, and re-entry planning promote the well-being of sex offenders while incarcerated and help both the offenders and society by reducing the likelihood of re-offence after release."[23] Sex Offender Management Programs (SOMP) are provided at designated institutions and include both residential and non-residential treatment. This treatment "involves high intensity programming" where participants "learn basic skills and concepts to help them understand their past offenses [and] benefit from a therapeutic community . . . where they work to reduce their risk of future offending."[24] Participation in sex offender treatment is "voluntary" and typically occurs "in the final three years of their incarceration."[25] Because Mr. Asino has demonstrated a commitment to sex offender treatment and rehabilitation, he requests that the Court recommend his designation to a SOMP institution "to provide . . . correctional treatment in the most effective manner."[26]

---

[23] Federal Bureau of Prisons, Custody & Care, Sex Offenders, *available at* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.
[24] *Id.*
[25] *Id.*
[26] 18 U.S.C. § 3553(a)(2)(D).

## **CONCLUSION**

Mr. Asino asks the Court to impose a sentence of 180 months in prison following his decision to plead guilty and accept responsibility for his crimes. The proposed sentence is undoubtedly substantial and adequately reflects the seriousness of the offense and need to protect the public while allowing him to rehabilitate through participation in BOP SOTM treatment services. Upon release from prison, Mr. Asino should be placed on twenty years of supervised release with the rigorous special conditions recommended in the PSR including, among other things, ongoing mental health and sex offender treatment to further his rehabilitation and to ensure his successful reintegration into the community.

DATED at Anchorage, Alaska this 22nd day of March, 2022.

Respectfully submitted,

*/s/ Samuel L. Eilers*
Samuel L. Eilers
Assistant Federal Defender
Counsel for Mr. Asino

Certificate of Service:
I, Samuel L. Eilers, hereby certify I electronically filed the
foregoing and any attachments with the Clerk of Court for
the United States District Court for the District of Alaska
by using the district's CM/ECF system on March 22, 2022.
All participants in this case are registered CM/ECF users
and will be served by the district's CM/ECF system.
*/s/ Samuel L. Eilers*